CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 19 2016

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| STEVEN STUART MARKS, | ) | CASE NO. 7:15CV00073 |
| | ) | |
| Petitioner, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| HAROLD W. CLARK, DIRECTOR, | ) | By: Hon. Glen E. Conrad |
| | ) | Chief United States District Judge |
| Respondent. | ) | |

Petitioner Steven Stuart Marks, a Virginia inmate proceeding pro se, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his confinement on three counts of aggravated sexual battery of a minor child. Upon review of the record, the court concludes that respondent's motion to dismiss must be granted.

## BACKGROUND

Marks stood trial before a jury on October 2, 2009, in the Augusta County Circuit Court on indictments charging him with three counts of aggravated sexual battery of a child less than thirteen years of age, in violation of Virginia Code Ann. § 18.2-67.3.[1] (CR09000036-00, -01, -02.) The jury found Marks guilty on all three counts. After conducting a sentencing hearing on February 25, 2010, and considering Marks' presentence report, the Circuit Court imposed three, consecutive, six-year terms of imprisonment, as recommended by the jury; however, the judge suspended three years of the sentence, for a total active sentence of fifteen years in prison.

Marks appealed unsuccessfully to the Court of Appeals of Virginia, Record No. 0447-10-3, and then to the Supreme Court of Virginia, Record No. 102254, which refused his appeal there

---

[1] The indictments alleged one incident of sexual abuse during each of three time periods when M.G. lived with Marks: August 1-31, 2005; January 1-14, 2007; and January 22-31, 2007.

on March 7, 2011. Marks then filed a petition for a writ of habeas corpus in the Circuit Court on March 7, 2012, which the Court dismissed with a lengthy opinion letter on April 30, 2014. (CL12000307-00.) The Supreme Court of Virginia refused his habeas appeal and, on March 5, 2015, denied Marks' petition for rehearing. (Record No. 141150.) Marks also filed a second petition for a writ of habeas corpus directly in the Supreme Court of Virginia on July 31, 2013. (Record No. 131214.) The Supreme Court of Virginia dismissed this petition on November 7, 2013, as untimely filed.[2]

In his federal habeas petition, Marks alleges the following grounds for relief from his conviction: (A) the prosecutor failed to disclose exculpatory evidence; (B) defense counsel failed to conduct a proper pretrial investigation; (C) defense counsel failed to file the proper motions after discovering new evidence; (D) the trial evidence was insufficient; (E) defense counsel failed to challenge the weakness of the victim's testimony about the charge involving masturbation; asked questions that prompted testimony that helped the prosecution prove that charge; and failed to argue that the evidence did not show that the victim had touched petitioner's penis; (F) defense counsel failed to present photographs showing the layout of petitioner's house where the crimes occurred; (G) defense counsel failed to present additional testimony from petitioner; and (H) defense counsel's cumulative errors constituted ineffective assistance.

---

[2] A prior order entered on September 13, 2013, dismissing the petition as successive, was vacated on rehearing, and the Court then entered the November 7, 2013 order to dismiss the petition as untimely.

Respondent has filed a motion to dismiss, arguing that Marks' claims are procedurally barred from federal habeas review or without merit.[3] Marks has responded to the motion, making the matter ripe for disposition.

## DISCUSSION

### A. Procedural Default

"[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) (citing O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999)). If a state court expressly bases its dismissal of a habeas claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the federal version of that habeas claim is also procedurally barred. Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998) (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)).

The parties admit that Marks has exhausted all of his claims. Three of his claims are procedurally defaulted, however. Marks presented Claims A, B, and C to the Supreme Court of Virginia in his second state habeas petition. The Court dismissed these claims as untimely under Virginia Code Ann. § 8.01-654(A)(2). This application of an independent and adequate state procedural default rule renders these claims procedurally barred in this court. See Weeks v. Angelone, 176 F.3d 249, 273-74 (4th Cir. 1999), aff'd, 528 U.S. 225 (2000). A federal habeas court may review the merits of such a procedurally defaulted claim if petitioner demonstrates

---

[3] In this opinion, wherever possible, the court will cite to documents from the state court proceedings that are attached as exhibits to respondent's motion to dismiss.

3

cause for the default and actual prejudice resulting from the alleged constitutional error.[4] Breard, 134 F.3d at 620.

Marks' remaining claims are not procedurally defaulted. He presented Claim D on direct appeal. The Court of Appeals of Virginia addressed the claim on the merits, and the Supreme Court of Virginia refused the subsequent appeal in a summary order. Marks presented Claims E through H in his first state habeas petition, and the Circuit Court addressed them on the merits. The Supreme Court of Virginia then refused his subsequent petition for appeal, finding no reversible error. Accordingly, Claims D through H are not barred by procedural default, and this court may address them on the merits.

### B. Failure to Show Cause

Marks argues that the court should also address the merits of defaulted Claims A, B, and C, because he can allegedly show cause for failing to file them with the state court in a timely manner. To show cause for his procedural defaults, Marks must identify "something external to the petitioner, something that cannot fairly be attributed to him [that] . . . impeded [his] efforts to comply with the State's procedural rule." Coleman, 501 U.S. at 753 (internal quotation marks and citations omitted). An error by trial or appellate counsel may establish cause for the procedural default of some other constitutional claim, but only if (1) the error meets the two-part standard for constitutionally ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 686-87 (1984); and (2) the ineffective assistance claim has not been procedurally defaulted under state law. Edwards v. Carpenter, 529 U.S. 446, 451-53 (2000).

---

[4] A § 2254 habeas petitioner's colorable claim of actual innocence can also serve as a "gateway" to secure the adjudication of his otherwise defaulted constitutional claims. Schlup v. Delo, 513 U.S. 298, 315 (1995). To open this procedural gateway, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of [some] new evidence." Id. at 327. Marks does not assert a colorable showing of actual innocence under the Schlup standard so as to open that gateway to consideration of his defaulted claims. See Burket v. Angelone, 208 F.3d 172, 183 n.10 (4th Cir. 2000) (finding that as petitioner bears burden to raise cause and prejudice or actual innocence, a court need not consider either if not asserted by petitioner).

4

Marks asserts that his three defaulted claims are based on "new" evidence that he first discovered, with due diligence, after the time limit for filing a state habeas petition. See Va. Code Ann. § 8.01-654(a)(2). This allegedly "new" evidence is information included in his presentence report about the initial complaint the minor victim (hereinafter "M.G.") made to law enforcement in May 2008. Marks claims that from 2008 to 2011, during trial and appeal proceedings, he never saw these prior statements by M.G. At sentencing and thereafter, his attorneys allegedly advised him that state law prohibited him from possessing his presentence report. In fact, the applicable statute was amended in 2005, before Marks was sentenced, to allow counsel to provide the accused with a copy of the report. See Va. Code Ann. § 19.2-299(A). According to Marks, in August 2012, while his initial state habeas petition was pending in the Augusta County Circuit Court, his habeas attorney discovered the statutory change, and Marks first obtained a copy of the presentence report from his trial attorney. Under Virginia Code Ann. § 8.01-654(a)(2), however, Marks only had until March 2012 (one year from the completion of his direct appeal in March 2011) to file state habeas claims challenging his convictions. By the time he obtained his presentence report, that time period had elapsed.

Marks contends that counsels' failure to provide him the presentence report earlier, based on their deficient research of state law, prevented him from timely discovery of the factual basis of Claims A, B, and C, and should serve as cause to excuse his defaults.[5] Marks made the same argument to the Supreme Court of Virginia in his 2013 habeas petition. The Supreme Court, however, dismissed the entire petition as untimely under § 8.01-654(a)(2). Therefore, Marks' claim of ineffective assistance concerning possession of his presentence report is procedurally

---

[5] Marks admits that before the sentencing hearing, the prosecution provided defense counsel with a copy of the presentence report containing M.G.'s prior statements. Therefore, Marks has not shown any suppression of the report by the prosecutor that could serve as cause for his default of Claims A, B, and C on appeal or during his initial state habeas proceedings.

5

defaulted. See Weeks, 176 F.3d at 273-74. As such, this claim cannot serve as cause to excuse default of any other constitutional claims, Edwards, 529 U.S. at 451-53, and Marks fails to offer any other circumstance that constitutes cause. In any event, Marks' defaulted claims all fail on the merits, because he has not shown a reasonable probability that earlier disclosure and use of M.G.'s prior statements would have resulted in a more favorable outcome at trial.[6]

### C. Claims A, B, and C: Lack of Merit

In Claim A, Marks asserts that the prosecution wrongfully suppressed M.G.'s prior statements. See Brady v. Maryland, 373 U.S. 83 (1963). Such a Brady claim has three fundamental components: "(1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State; and (3) the evidence must be material to the defense, that is, prejudice must . . . ensue[ ]."[7] Walker v. Kelly, 589 F.3d 127, 137 (4th Cir. 2009) (internal quotation marks and citation omitted). "Undisclosed evidence is material when its cumulative effect is such that 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" United States v. Sterling, 724 F.3d 482, 511 (4th Cir. 2013) (quoting Kyles v. Whitley, 514 U.S. 419, 433-34 (1995)).

Procedurally defaulted Claims B and C allege that counsel should have uncovered M.G.'s prior statements during pretrial investigation for impeachment use during trial or should have used those statements to challenge the guilty verdicts. These claims both require a showing that

---

[6] To excuse a procedural default, petitioner must demonstrate "'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Murray v. Carrier, 477 U.S. 478, 494 (1986) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). Because Marks fails to make the showings of prejudice required in a substantive analysis of Claims A, B, and C on the merits, the court need not further define the "actual prejudice" showing required to excuse defaults.

[7] The burden of proving a Brady violation rests with the defendant. United States v. King, 628 F.3d 693, 701-02 (4th Cir. 2011).

6

counsel's alleged deficiency resulted in prejudice—using a legal theory identical to the materiality element of a Brady claim. Under the established ineffective assistance standard in Strickland v. Washington, "a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent [counsel's alleged] errors." 466 U.S. at 696.

Marks asserts that M.G.'s prior statements to police are material under Brady and prejudicial under Strickland, because his attorney could allegedly have used them to prove that M.G. was lying at trial. This contention has no factual support in the record.

According to the presentence report, police in Maryland and sheriff's deputies in Virginia recorded M.G.'s initial complaint in May 2008 as follows:

> [M.G. said] her grandfather ha[d] been assaulting her since she was approx. 5 years of age. [M.G.] stated her grandfather would put his fingers inside of her. Then he would try to "lick me down there". [M.G.] was pointing to her vagina. [M.G.] advised when she was approx. 5 years of age her grandfather tried to stick his penis inside her vagina, but was unable to get it all the way in there. [M.G.] explained she would ask him to stop touching her but he would not listen to her and continued to do what he was doing.
>
> [M.G.] advised that her brother and her used to live with their grandparents in Stuarts Draft, Virginia. They moved to Maryland to live with their mother in June 2007. When she was living with her grandparents her grandfather would sexually assault her a couple of times a week. Since moving to Maryland her grandfather would sexually assault her every time she goes down to visit them. The last time she saw him was February 2008.

(Pet. Ex., ECF No. 1-1, at 60-61.) At trial, in October 2009 and shortly after M.G. had turned ten years old, she testified that Marks had periodically sexually abused her, beginning around the time of her sixth birthday and continuing for two and a half years. She testified that approximately three times per week, Marks rubbed her vagina through her clothes while watching pornography on his computer; two times per week, he licked her bare vagina; and once per week, he made her masturbate him.

7

As this summary reflects, the discrepancies between the prior statements to law enforcement and the trial testimony are not significant, particularly when taking into account the age of the child and the passing of time. Each account involved licking and touching of the vagina more than once per week, starting around M.G.'s sixth birthday. The reference to penile penetration concerned a one-time, unsuccessful event, and the only additional behavior discussed at trial was Marks' masturbation during which he had M.G. put her hand on his penis. Marks claims that the trial testimony described a much larger (even "impossible") number of abuse incidents than M.G. had mentioned to police. M.G.'s testimony, however, offers no reason to believe that the separate types of behavior she described always happened separately, on separate dates. Indeed, she stated at trial that Marks put his mouth on her vagina "almost every time." (Vol. 1 Tr. 123.)[8] It is not unreasonable to accept that in May 2008 at the age of nine, M.G.'s initial recollection and description of the ways Marks had abused her for more than two years, starting when she was barely six, might not be clear or complete. It is also expected that in preparing for her grand jury testimony and for trial, as she was questioned by investigators or prosecutors, M.G. would remember additional details about the abuse and refine her descriptions of Marks' actions.

Moreover, it is impossible to predict from the record that defense questioning of M.G. at trial about her earlier report—that Marks had digitally penetrated her and had attempted penile penetration—would have elicited answers more favorable than detrimental to the defense. Similarly, the court cannot find M.G.'s varying accounts to be materially inconsistent so as to support a motion for mistrial or motion to set aside the verdict, and cannot find any reasonable probability that disclosure of her prior statements to the jury would have resulted in a different

---

[8] The transcript of the trial proceedings, as provided to this court as part of the Circuit Court record, is in two bound volumes, hereinafter designated as "Vol. 1 Tr." or "Vol. 2 Tr."

8

outcome at trial for Marks. For the stated reasons, the court concludes that Claim A has no merit under Brady, and Claims B and C fail under both facets of the Strickland analysis. Because these claims are thus both procedurally barred and lack merit, the court will grant the motion to dismiss as to Claims A, B, and C.

### D. Standard of Review for Adjudicated Claims

To obtain federal habeas relief, petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under 28 U.S.C. § 2254(d), however, the federal habeas court may not grant a writ of habeas corpus based on any claim that a state court decided on the merits unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Williams v. Taylor, 529 U.S. 362, 403-13 (2000). "Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Under this standard, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 66, 101 (2011) (omitting internal quotations).

### E. Sufficiency of the Evidence

In Claim D, Marks contends that the evidence as a whole demonstrates the inherent incredibility of the Commonwealth's primary witnesses against him—M.G. and her mother, Shannon. Marks raised this contention on direct appeal. The Court of Appeals of Virginia concluded that the evidence was sufficient to support the convictions, and the Supreme Court of

9

Virginia issued a summary order finding no error. Thus, under § 2254(d), this court may grant relief on Claim D only upon determining that the Court of Appeals' rulings were objectively unreasonable. See Brumfield v. Cain, __U.S.__, __, 135 S. Ct. 2269, 2276 (2015) (finding that federal habeas court "look[s] through" state supreme court's summary dismissal of appeal petition and evaluates lower court's reasoned decision addressing claims on the merits) (citations omitted); Harrington, 562 U.S. at 101.

In habeas corpus proceedings, the reviewing court must find the evidence sufficient to support the conviction so long as, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This standard does not require the prosecution "to rule out every hypothesis except that of guilt." Id. at 318. Furthermore, it is the responsibility of the jury—not the court—to resolve issues of witness credibility and conflicting evidence, to assign weight to the evidence, id. at 319, and "to decide what conclusions should be drawn from evidence." Cavazos v. Smith, __U.S.__, __, 132 S. Ct. 2, 4 (2011) (per curiam). In applying the Jackson standard, the federal habeas "court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable." Id. at 4 (internal quotation marks and citation omitted).

In addressing Marks' claim of insufficient evidence, the Virginia Court of Appeals found the following facts from the evidence, viewed in the light most favorable to the Commonwealth:

> [T]he evidence proved that M.G. resided with [Marks], her stepgrandfather, from 2005 until the summer of 2008. She testified that beginning in August 2005, when she was six years old, [Marks] began touching her vagina and made her touch his penis. M.G. provided a detailed account of the sexual contact. She

explained she did not immediately report the activity because she "thought that [she] would get hurt if [she] told anyone." She finally reported the abuse to her mother. M.G.'s mother confirmed M.G. reported the sexual contact to her.

(M. Dism. Ex. A, at 1.) The Court ruled that corroboration of the victim's testimony was not required and that "[i]t is the responsibility of the jury to determine what effect, if any, the victim's delay in reporting sexual crimes has on her credibility." (Id., at 2.) The Court concluded:

> [T]he jury believed M.G.'s account of the events and rejected appellant's theory that her testimony was fabricated and motivated by her mother's custody dispute with her father. The record supports the jury's credibility determination. The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant was guilty of three counts of aggravated sexual battery.

(Id., at 2.)

After reviewing the state court records, including the trial transcript, and the parties' arguments, the court concludes that the Court of Appeals' adjudication of this insufficiency claim was not contrary to, or an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts. Under Virginia law, "[a]n accused shall be guilty of aggravated sexual battery if he or she sexually abuses the complaining witness, and . . . [t]he complaining witness is less than 13 years of age . . . ." Va. Code Ann. § 18.2-67.3(A)(2). For purposes of this statute,

> "sexual abuse" means an act committed with the intent to sexually molest, arouse, or gratify any person, where: a. [t]he accused intentionally touches the complaining witness's intimate parts or material directly covering such intimate parts; b. [t]he accused forces the complaining witness to touch the accused's, the witness's own, or another person's intimate parts or material directly covering such intimate parts; c. [i]f the complaining witness is under the age of 13, [and] the accused causes or assists the complaining witness to touch the accused's, the witness's own, or another person's intimate parts or material directly covering such intimate parts; or d. [t]he accused forces another person to touch the complaining witness's intimate parts or material directly covering such intimate parts.

11

Va. Code Ann. § 18.2-67.10(6). Thus, contrary to Marks' contentions, a guilty verdict did not require the jurors to believe, literally, that Marks committed all the acts exactly as M.G. described, as many times as she estimated. To find Marks guilty, the jurors had to find M.G.'s testimony credible, beyond a reasonable doubt, that he committed some act with her, meeting one of the several definitions of sexual battery in § 18.2-67.10(6), during each of the three periods charged in the indictments. This court can neither find M.G.'s testimony to be inherently incredible, nor find that no reasonable juror could conclude from her testimony that Marks committed the three charged offenses. Moreover, some defense witnesses, including Marks, were impeached by prior statements, factual inconsistencies, or defensive answers, or by their inherent bias as family members. The court will grant the motion to dismiss as to Claim D.

### F. Ineffective Assistance Claims

As stated, a constitutional claim of ineffective assistance requires showings "that counsel's performance was deficient," and "that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 686-87. Petitioner must overcome "a strong presumption" that counsel's performance was reasonably competent, and the court may adjudge counsel's performance deficient only when petitioner demonstrates that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 689-90. Even if petitioner can establish deficient performance under this high standard, habeas relief is unavailable unless he also shows a "reasonable probability" that, but for counsel's errors, the outcome of the proceeding would have been different. Id. at 694-95. The court must deny relief if petitioner fails to establish either facet of this Strickland standard. Id. at 697.

12

Marks presented Claims E through H in his first state habeas petition in the Augusta County Circuit Court, which denied relief under Strickland; then, the Supreme Court of Virginia denied his habeas appeal in a summary order finding no error. Thus, under § 2254(d), this court may grant relief on these ineffective assistance claims only upon determining that the Circuit Court's application of Strickland, as detailed in the opinion letter of April 30, 2014, was objectively unreasonable.[9] See Brumfield, 135 S. Ct. at 2276; Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (recognizing federal reviewing court's obligation for "doubly deferential judicial review" of Strickland claims under § 2254(d)(1); "because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard") (citation omitted).

**Claim E: Cross-Examination of the Victim**

In his first state habeas claim of ineffective assistance (federal Claim E), Marks faulted counsel for helping the Commonwealth overcome a weakness in its case that Marks made M.G. masturbate him. Counsel's alleged error was eliciting testimony from M.G. on cross-examination that she had touched Marks' penis, although M.G. had not so testified on direct examination.[10] The Circuit Court found this claim meritless under both facets of Strickland:

---

[9] Applying § 2254(d) in this context, a state court's adjudication is considered contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court decision unreasonably applies clearly established federal law if the court identifies the correct legal principle, but unreasonably applies it to the facts of the case. Id. at 413. Factual determinations made by the state court are "presumed to be correct," and the petitioner has the burden of rebutting that presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

[10] On direct, M.G. testified that Marks had "started going up and down on his private area, and he . . . . And then there was white stuff coming out of the tip; and he put that on my stomach." (Vol. 1 Tr. 123.) On cross-examination, defense counsel asked M.G., "And you said one time that you touched his private area, and white stuff came out?" which led to M.G.'s response: "Yeah—because he made me." (Vol. 1 Tr. 137.) M.G. also testified on redirect that sometimes while she was with Marks, he would masturbate himself until the "white stuff" went onto his legs or onto M.G., and sometimes he used a condom to catch it. (Vol. 1 Tr. 142-43.)

13

> [M.G.'s] testimony regarding that particular incident was not weak. On the contrary, during her testimony describing the act of Marks' masturbation, the Commonwealth instructed [M.G.] to "show the judge and jury how he had your hand," and she did so. That Marks was at least causing or assisting [M.G.] is implicit in the response of the child to the . . . instruction, that response being a hand motion. . . . [Defense counsel's later] question merely reflected his recognition that the child had indicated the manner in which Marks had directed her hand in the process.

(M. Dism. Ex. G, at 4, citing Vol. 1 Tr. 123.) The Circuit Court expressly found that "[t]he evidence offered by [M.G.'s] demonstrating a hand motion to the jury satisfied the Commonwealth's burden" on the element of the crime that Marks "cause[d] or assist[ed] the complaining witness to touch [his] . . . intimate parts . . . ." (Id.) In addition, the Court found no prejudice, because none of the three indictments charged Marks with causing M.G. to masturbate him. M.G. testified that Marks had repeatedly abused her in ways other than masturbation, by touching her vagina through her clothing and putting his mouth on her vaginal area. The Court found this other evidence sufficient to support the three counts of aggravated sexual assault charged in the indictments.

In his federal petition, Marks fails to demonstrate that the state courts' adjudication of this claim was contrary to, or an unreasonable application of, Strickland, or that it was based on an unreasonable determination of the facts in the state court record. Moreover, counsel's actions as a whole followed a strategic plan to deal with the evidence about masturbation. He argued that M.G.'s testimony about Marks having "her masturbate him until he ejaculated" while other people were present in the Marks' small, crowded house was simply incredible. (Vol. 1 Tr. 85.) The court cannot find that this defense tactic was unreasonable under the circumstances facing Marks. Because Marks fails to meet his burden under Strickland or § 2254(d), the court will grant the motion to dismiss as to Claim E.

14

### Claim F: Photographs of the House

In his second state habeas claim (federal Claim F), Marks argued that counsel should have introduced photographs of the Marks residence where the crimes occurred. According to Marks, photos would have showed the jury that "[t]he alleged abuse simply could not have occurred as [M.G.[ allege[d]: several times a week over several years in a small ranch home regularly occupied by several people and occurring in the dining room and/or a bedroom that is located directly in the middle or main passage of the home." (State Habeas Pet. 10, ECF No. 7-6.) The Circuit Court rejected this claim, noting that "counsel argued vigorously that the size and layout of the house called into serious question that the events could have occurred unnoticed, as [M.G.] claimed." (M. Dism. Ex. G, at 6.) The Court found neither deficient performance nor resulting prejudice under Strickland.

This court agrees. The record reflects that counsel presented extensive evidence about the size and layout of the house, how many people lived there, and how often one or more of them was home. Elizabeth Shifflett, the girlfriend of M.G.'s father who lived in the house while M.G. was there, testified that the rooms were "all right in the same area" and the computer where much of the abuse allegedly occurred was "[r]ight in the middle of it all." (Vol. 1 Tr. 193-94.) Marks' wife, Susan, testified that their residence was "a small house—small rooms." (Vol. 2 Tr. 37.) Susan testified that if she were in the house, as she usually was, Marks could not have abused M.G. at the computer, "[b]ecause everybody can see the computer"; or in their bedroom as M.G. testified, because if the bedroom door was open, "[y]ou can see straight into my bedroom," and if the door was closed, she "would have heard an argument, something. [She] could hear everything going on in that house." (Vol. 2 Tr. 38.) From this evidence, as stated, counsel argued that the events M.G. described simply could not have happened. Even the

15

prosecutor described counsel's efforts as "a very, very spirited defense . . . with every imaginable explanation for why this wasn't possible." (Vol. 2 Tr. 127.)

Marks simply has not demonstrated that counsel's decision not to use photographs of the house in addition to testimony was an unreasonable tactic, nor has he shown a reasonable probability that after seeing the photographs and diagram attached to his habeas petition, the jurors would have reached a different conclusion about his guilt. Under § 2254(d), this court finds that the state courts' adjudication of Marks' claim was not contrary to, or an unreasonable application of, Strickland, and was not based on an unreasonable determination of the facts in the state court record. Therefore, the court will grant the motion to dismiss as to Claim F.

**Claim G: Defendant's Testimony**

In his third state habeas claim (federal Claim G), Marks alleged that counsel should have presented additional evidence through Marks' own testimony. In support of this claim, Marks set out a six-page account of his potential testimony, offering details about: how Shannon left M.G. and her step-brother for two years with their dad, Felix, who lived with Marks and his wife; Felix's girlfriend, who also lived with them; the work and school schedules everyone kept; family activities like boating, fishing, camping, and playing ball; Shannon's periodic visits and disappearances; the kids' visits with Shannon's parents and later, with Shannon and her new boyfriend; Shannon's agreement with Felix that M.G. and her brother should move to Maryland in the summer of 2007 to live with Shannon, who had married; the kids' visits with Marks and his wife for Thanksgiving and Christmas of 2007; an email exchange between Susan Marks and Shannon in April 2008 over the kids' summer plans, during which Susan threatened to take court action against Shannon for custody of the kids; a three-hour interview Marks underwent at the sheriff's office that summer about M.G.'s allegations of sexual abuse; the Marks' opinion that

16

Shannon had coached M.G. to fabricate the abuse incidents; the lack of any physical examination to verify M.G.'s stories; M.G.'s shyness about her body and her out-spoken nature; the indictments and Marks' arrest; investigators' attempts to convince Marks to confess; Marks' reasons that the events M.G. described could never have happened, including the size and layout of the crowded, busy house and his own four-year history of erectile dysfunction; Marks' assessment of M.G.'s happy nature and lack of fear around him; M.G.'s many earlier opportunities to report the abuse to caring adults in her life; Marks' history of being around children without similar accusations; and his great love for M.G. as his grandchild. Marks contended that if he had been allowed to testify fully about these matters, the jury would never have found him guilty of the sexual abuse.

The Circuit Court devoted more than nine pages of the opinion letter to this claim. The Court first found, correctly, that a claim that counsel had interfered with the defendant's right to testify is evaluated under Strickland. See, e.g., Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Based on a defendant's right to testify on his own behalf, however, the Circuit Court refused to accept respondent's position that Marks' claim alleged nothing more than counsel's reasonable strategic choices concerning the topics on which to question Marks. (See M. Dism. Ex. G, at 7) (reflecting court's assumption without finding that counsel's "preventing Marks from testifying (if he did so) was, per se, ineffective counseling" under first facet of Strickland). See Rock v. Arkansas, 483 U.S. 44, 51-52 (1987). The Circuit Court then reviewed each paragraph in Marks' proposed testimony, discussing whether each item of information was presented by his testimony or by other witnesses; if not, whether it was admissible, and if so, whether lack of that information was prejudicial under the Strickland definition. The Court expressly found that:

> [c]onsidering all of the evidence, Marks has not affirmatively shown that his failure to testify to the facts which would have been admissible created actual prejudice such that, had he testified to them, 'there is a reasonable probability that . . . the result of the proceeding would have been different.' Strickland, 466 U.S. at 694.
>
> Assuming [but not finding] that [defense counsel] did not permit Marks to testify as Marks now maintains he desired to do, this claim nevertheless fails because Marks did not show that he was prejudiced by counsel's actions.

(M. Dism. Ex. G, at 7.)

This court cannot find that the state courts' adjudication of this claim was contrary to, or an unreasonable application, of established federal law, or that it was based on an unreasonable determination of the facts. For reasons stated in detail in the Circuit Court's opinion letter, there is no reasonable probability that the testimony Marks was allegedly prevented from giving would have changed the outcome. Because Marks thus fails to demonstrate prejudice under Strickland, the court will grant the motion to dismiss as to Claim G.

**Claim H: Cumulative errors by counsel**

In his final state habeas claim, as here, Marks asserted that the court could find, from the cumulative effect of counsel's alleged omissions and mistakes, that the attorney's representation was professionally deficient and prejudicial. The Circuit Court rejected this claim because it found no multiple "errors to aggregate or prejudices to cumulate." (See M. Dism. Ex. G, at 15.) (citing Fisher v. Angelone, 163 F.3d 835, 852 (4th Cir. 1998)). Marks has not shown that the state courts' adjudication of this claim was contrary to, or an unreasonable application, of established federal law, or that it was based on an unreasonable determination of the facts. Therefore, this court will grant the motion to dismiss as to Claim H. See, e.g., Wainwright v. Lockhart, 80 F.3d 1226, 1233 (8th Cir. 1996) (holding that attorney's acts or omissions "that are not unconstitutional individually cannot be added together to create a constitutional violation").

## CONCLUSION

For the reasons stated, the court concludes that the motion to dismiss must be granted. Marks has not shown cause for his procedural defaults of Claims A, B, and C, which are also without merit; and Marks has not carried his burden under § 2254(d) to show that the state habeas courts' adjudication of his other habeas claims was contrary to, or an unreasonable application of, established federal law, or based on an unreasonable interpretation of the facts in the record. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to the parties.

ENTER: This 19th day of February, 2016.

*/s/ Glen E. Conrad*
Chief United States District Judge